IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD HAMMONDS, JD 8826 | Civil Action No. 10-444 |
| Plaintiff, | District Judge David S. Cercone |
| v. | Magistrate Judge Cynthia Reed Eddy |
| JOHN DOE 1; JOHN DOE II; JOHN DOE III; JOHN DOE IV; OFFICER RANDY JUSTICE; OFFICER KOVAC; OFFICER MAXWELL; OFFICER PENDAL; OFFICER EDWARDS; OFFICER YOUNG; OFFICER CHRONISTER; OFFICER HOLLOWAY; OFFICER WILLIAM FRANCIS; OFFICER BEST; SGT. ANDREW COULTER; WARDEN RAMON RUSTIN; CHIEF EXECUTIVE DAN ONORATO, | |
| Defendants. | |

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 55) be granted with respect to Plaintiff's official liability claims against all Defendants and denied with respect to Plaintiff's individual liability claims except as to Defendants Onorato and Rustin.

**II.  REPORT**

Plaintiff, Richard Hammonds, is a Pennsylvania inmate previously housed at the Allegheny County Jail (ACJ) located in Pittsburgh, Pennsylvania. He commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. On June 4, 2010 (ECF No. 10), he

1

filed an Amended Complaint against seventeen Defendants employed by Allegheny County during the relevant time period. Defendants include: John Doe I; John Doe II; John Doe III; John Doe IV; Officer Randy Justice; Officer Kovac; Officer Maxwell; Officer Pendal; Officer Edwards; Officer Young; Officer Chronister; Officer Holloway; Officer William Francis; Officer Best; Sgt. Andrew Coultier; Warden Ramon Rustin; and Chief Executive Dan Onorato. Presently pending is Defendants' Motion to Dismiss (ECF No. 55), which, for the reasons that follow, should be denied except as to Defendants Rustin and Onorato.

A. Standard of Review

On October 25, 2011, Defendants filed a Motion to Dismiss (ECF No. 55). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v.

Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).

B. Plaintiff's Allegations

3

Plaintiff alleges that on July 4, 2009, Officers Justice and John Doe came to his cell, 207, to conduct a cell search in search of a home-made knife, also known as a "shank." Justice entered the cell and ordered Plaintiff to submit to a strip search allegedly calling him a "nigger." Plaintiff replied "fuck you pussy cracker take me to the hole." Justice forcibly grabbed Plaintiff's neck and twisted his left arm behind his back his back and savagely bit his left hand. Plaintiff claims that this led to his involuntarily punching Justice repeatedly in the face until he released his hand from his mouth. Plaintiff claims that Officer John Doe, in response to "the commotion," handcuffed him and escorted him to the sally port on level 6-E.

At the sally port, Officers Coultier, Kovac and Justice escorted Plaintiff down a hallway to an interview room where the following exchange allegedly occurred.

Justice: "payback time nigger."

Hammond: "Fuck you talking about bitch you started it when you bit me."

Kovak: "And now where [sic] going to finish it" and allegedly shoves Plaintiff into the room.

Kovak: I am going to take these handcuffs off. When I do place your hands on the wall and don't move or I'm going to beat the ape out of you putting you back in a monkey's place.

Coultier: "Go ahead Justice, fuck him up."

Justice: "Turn around bitch" and throws a punch at Plaintiff, which he "dips with ease."

Coultier: "Come on Justice, don't let this nigger when [sic]." Justice then tackled Plaintiff to the ground.

Courtier: "Round two."

Justice then punches Plaintiff in face, Plaintiff punches back, all three officers knock him nearly unconscious, split his lip almost halfway off, handcuff him and escort him to

4

the DHU (disciplinary unit).  While being stripped searched, Plaintiff asked Defendants Kovak and Doe for medical but both officers refused.  Instead, they escorted him to cell 206 on 8E and left him there without contacting medical.  During the 11 to 7 shift, he asked Officer Francis for medical but he said: "Fuck you nigger, shoud've never hit my friend."  When he asked again, Francis again refused as did Officer Doe during the next shift.  The next morning, Plaintiff asked Officer Edwards for medical and was told that the higher ups told him not to do anything for Plaintiff.  Plaintiff further alleges that he asked Officers Pendal and Maxwell for medical care but they similarly refused.

On July 6, 2009, Plaintiff avers that he was interviewed by internal affairs.  Sometime thereafter, he was seen by the medical department and was sent to an outside hospital for further examination.  He avers that he was prescribed antibiotics, ibuprofen and mouth wash and sent back to the ACJ.  He claims that he was subjected to excessive force and the denial of adequate medical care in violation of the Eighth and Fourteenth Amendments.

C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege:  1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

5

Plaintiff seeks to assert liability against Defendants in their official and individual capacities. Defendants are employees of Allegheny County. Thus, Plaintiff's official liability claims are construed as asserting liability against Allegheny County.

In Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, *i.e.*, through application of the doctrine of *respondeat superior*. Instead, the Court concluded that a governmental unit may be liable under section 1983 only when its "policy" or "custom," whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, directly inflicted the injury. Monell, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible, *i.e.*, acts that the municipality has officially sanctioned or ordered. *Id*. In Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), the Court further clarified that "municipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483 (citation omitted).

Moreover, mere identification of a policy or custom is not enough to establish municipal liability; a plaintiff also must establish causation. In this regard, a plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation at issue. Board of County Com'rs of Bryan County,

Okl. v. Brown, 520 U.S. 397, 405 (1997) (a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights).

As set forth above, the County cannot be liable for any constitutional deprivations suffered by Plaintiff unless "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). The Supreme Court has instructed that "policy" is made when a decisionmaker possessing final authority over the subject matter issues an official proclamation, policy, or edict. Pembaur, 475 U.S. at 481. Custom can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. Monell, 436 U.S. at 690. *See also* Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

In the case at bar, Plaintiff's Complaint concerns one discrete incident. It is well settled that a single incident of unconstitutional behavior, without any direct involvement by a municipal policy maker, is not sufficient to impose municipal liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); City of Oklahoma v. Tuttle, 471 U.S. 808, 822 (1985); Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (plaintiff's mere assertion of the incident at issue, plus vague assertions about the police department's failure to investigate other wrongdoings, did not provide sufficient proof of a policy or custom to satisfy the dictates of section 1983). Thus, Plaintiff's allegations are insufficient to state a claim upon which relief may be granted against Allegheny County. Consequently, Plaintiff's Complaint must be dismissed against all of the Defendants in their official capacity. Plaintiff's claims against Defendants in their individual capacities are discussed below.

D. <u>Defendants Rustin and Onorato</u>

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. <u>Rode</u>, 845 F.2d at 1207.

In his Amended Complaint and Response to Defendants' Motion, Plaintiff makes allegations sufficient to impose personal liability against all Defendants based either on their actions (excessive use of force) or inactions (failure to provide medical treatment/failure to intervene in excessive use of force) except as to Defendants Rustin and Onorato. Defendant Rustin is the Warden at the ACJ and Defendant Onorato is a Chief Executive of Allegheny County. Neither of these individuals was present during the alleged incident nor had any reason to have knowledge of the incident until well after the fact, if at all. There simply is no basis upon which to impose liability upon either of these individuals. *Cf*. <u>Gagliardi v. County of Allegheny</u>, Civil No. 2:02-241, 2007 WL 838971, 7 (W.D. March 15, 2007) (granting summary judgment to Defendants Rustin and Onorato as Plaintiff failed to allege and prove that they had any personal involvement in the medical care he received while incarcerated).[1] Consequently, the Motion to Dismiss should be granted as to these Defendants in their individual liability as well.

---

[1] *But see* <u>Howie v. Allegheny County</u>, Civil No. 08-1406, 2009 WL 1309749, 2 (W.D. Pa. May

E. Excessive Use of Force

There are three sources of constitutional protection against the use of excessive force by government officials: the Fourth, Eighth and Fourteenth Amendments. Graham v. Connor, 490 U.S. 386, 394 (1989). The Fourth Amendment protects free citizens against the use of excessive force by law enforcement officers during the course of an arrest, investigatory stop, or other "seizure." Id. at 395. After conviction, the Eighth Amendment prohibition against cruel and unusual punishment protects inmates from the excessive use of force by prison guards during post-conviction incarceration. Id. (citing Whitley v. Albers, 475 U.S. 312, 327 (1986)). Finally, "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Id. at n. 10 (citing Bell v. Wolfish, 441 U.S. 520, 535-539 (1979)). The core judicial inquiry, is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Defendants fail to inform this Court whether Plaintiff was a convicted prisoner or a pre-trial detainee on July 4, 2009. The Court need not resolve this issue because, under either standard, Plaintiff's allegations, which the Court must construe entirely in his favor, are sufficient to allege a claim of excessive force and/or failure to intervene to prevent such force. *See* Brooks v. Kyler, 204 F.3d 102, 104 (3d Cir. 2000); Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) ("We hold that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. Furthermore, we hold that a

---

11, 2009) (holding that allegations were sufficient to allege individual liability against Rustin and

corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers."). Accordingly, the Motion to Dismiss must be denied as to these claims.

The same analysis applies to Plaintiff's failure to provide medical care, which arises under either the Due Process Clause (Hubbard v. Taylor, 399 F.3d 150, 158-159 (3d Cir. 2005)) or the Eighth Amendment (Gamble v. Estelle, 429 U.S. 97 (1978)) depending on the prisoner's status at the time of the alleged incident. Again, it makes no difference as Plaintiff's allegations are sufficient to allege a claim of failure or undue delay in providing adequate medical care. *See* Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (holding that dliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury). Accordingly, the Motion to Dismiss must be denied as to these claims as well.

F. Abstention Bars

Defendants next assert that the Plaintiff's claims are barred under the doctrine set forth in Heck v. Humphrey, 512 U.S. 477 (1994). The following discussion reveals that Defendants' cursory assertion that Heck bars the Plaintiff's excessive force claim is not sufficient to demonstrate that they are entitled to dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6).

In Heck, the petitioner was convicted of voluntary manslaughter for killing his wife. While his direct appeal was pending in the state courts, Heck filed a suit under 42 U.S.C. § 1983 against the prosecutors in his criminal action and various members of the state police

---

Onorato).

department. The complaint alleged that the defendants had engaged in an unlawful investigation and had knowingly destroyed exculpatory evidence. Heck sought compensatory and punitive damages but did not seek injunctive relief or release from custody.

The Supreme Court noted that disposition of Heck's claim required inquiry into the proper relationship between the Civil Rights Act and the federal habeas corpus statute (28 U.S.C. § 2254), both of which provide a federal forum for prisoners to raise claims of constitutional violations. In analyzing the propriety of instituting a civil damages claim based on an improper conviction, the Court reiterated the firmly entrenched rule that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement. Id. at 481 (citation omitted). The Court further noted that the habeas statute, unlike the Civil Rights Act, requires a petitioner to "exhaust" his federal claims by presenting them to the appropriate state courts prior to seeking federal relief. After reviewing its origin and history, the court determined that the civil rights law was not meant to provide a means for collaterally challenging the validity of an outstanding criminal judgment through the pursuit of money damages. In so concluding, the court announced the following rule.

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the

> invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id*. at 486-87 (footnotes omitted).

Defendants assert that the Plaintiff's excessive force claim is barred under Heck because they assert that a judgment in Plaintiff's favor on his excessive force claim necessarily would imply the invalidity of the conviction for which he pleaded guilty to. To this end, they point to the fact that Plaintiff entered a guilty plea to a simple assault charge stemming from the incident for which he was sentenced to three to six months.

The United States Court of Appeals for the Third Circuit explained the Heck bar in Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997). In Nelson, the defendant police officer Jashurek attempted to arrest Nelson for parole violations. Nelson resisted arrest and a struggle arose, which resulted in Nelson being charged with resisting arrest under Pennsylvania law in violation of 18 Pa. Cons. Stat. § 5104, which provides that a person is guilty of resisting arrest if "with the intent of preventing a public servant from effecting a lawful arrest [he] creates a substantial risk of bodily injury to the public servant . . . or employs means justifying or requiring substantial force to overcome the resistance." The trial court charged the jury that "if Nelson's actions "did not justify substantial force by [Jashurek], you must find Mr. Nelson not guilty." Nelson, 109 F.23 at 145. Nelson was convicted of the resisting arrest charge and then filed a section 1983 claim against Jashurek for excessive force. The United States Court of Appeals for the Third Circuit determined that, because the jury found Nelson guilty, it must have concluded that Jashurek was justified in using "substantial force." *Id*. Notwithstanding, the circuit court concluded that Heck did not bar Nelson's 1983 action for excessive force because the fact that Jashurek was justified in using "substantial" force to arrest Nelson did not mean that

12

he was justified in using an "excessive" amount of force and thus, did not mean that his actions in effectuating the arrest necessarily were "objectively reasonable," the standard applied for excessive force claims under the Fourth Amendment. *Id*. at 146. "In short, there undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable." *Id*. Accordingly, the court concluded that a finding that Jashurek used excessive force would not necessarily imply the invalidity of the plaintiff's conviction. *Id*.

The Court expanded this reasoning in Garrison v. Porch, 376 F. App'x 274, 278 (3d Cir. 2010) finding as follows.

> Porch here argues that because Garrison pled guilty to assaulting the arresting officer, the force Porch used in taking Garrison into custody could not have been excessive. However, the fact that Garrison's threatened or attempted use of force was unlawful does not automatically mean that there is no use of force that Porch could have used in response which could have risen to the level of unreasonable and excessive. Porch was still constrained to use only the level of force which was reasonable to bring Garrison into custody. While the fact that Garrison was acting in an unruly and threatening manner certainly factors into the totality of the circumstances and may have justified a greater use of force than would have been reasonable had Garrison been peaceful and cooperative, it certainly did not dispense with the reasonableness requirement altogether.

The same reasoning applies to the case at bar. The mere fact of a conviction for assault or similar conviction arising out of the same incident does not automatically preclude recovery on an excessive force claim brought under § 1983. Consequently, Defendants' Motion to Dismiss should be denied on this basis as well.[2]

### III. CONCLUSION

Based on the discussion above, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 56) be granted with respect to Plaintiff's official liability claims against all

---

[2] Defendants' assertions that the Complaint is barred under the Rooker-Feldman and Collateral

Defendants and denied with respect to Plaintiff's individual liability claims except as to Defendants Onorato and Rustin.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to this report. Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto. Failure to timely file objections will constitute a waiver of any appellate rights.

<table>
<tr><td>February 7, 2012</td><td>/s/ Cynthia Reed Eddy<br>Cynthia Reed Eddy<br>United States Magistrate Judge</td></tr>
</table>

Richard A. Hammonds
JD 8826
SCI Frackville
1111 Altamont Blvd.
Frackville, PA 17931

---

Estoppel doctrines fail for the same reasons.